IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUCY XI,<br><br>Defendant. | CRIMINAL ACTION<br>NO. 16-22-5 |

**OPINION**

**Slomsky, J.**  August 1, 2018

## I. INTRODUCTION

On May 24, 2017, a forty-five count Superseding Indictment was returned against the five Defendants, Yu Xue, Tao Li, Yan Mei, Tian Xue, and Lucy Xi. Defendant Lucy Xi is charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1); conspiracy to steal trade secrets in violation of 18 U.S.C. § 1832(a)(5) (Count 2); wire fraud in violation of 18 U.S.C. § 1343 (Counts 4-19); and theft of trade secrets in violation of 18 U.S.C. § 1832(a) (Counts 23-25). (Doc. No. 125.) The charges stem from an alleged conspiracy to steal confidential and trade secret information from GlaxoSmithKline, LLC ("GSK") for the use of a rival corporation, Renopharma, Ltd., created in China.

Before the Court is Defendant Lucy Xi's Motion to Dismiss for Prosecutorial Misconduct or, in the Alternative, Motion to Sever. (Doc. No. 159.) First, Defendant Xi contends that the charges against her in the Superseding Indictment should be dismissed because a Government agent has admitted that Defendant Xi had no malicious intent to steal trade secrets but that the Government still charged her in an attempt to coerce her cooperation against the other Defendants. (Id. at 5.) Alternatively, Defendant Xi contends that her trial should be severed

from that of her co-Defendants because she would face a substantial risk of prejudice if she is tried with them. (Id.)

The Government has filed a Response to her Motion (Doc. No. 165), and Defendant Xi has filed a Reply (Doc. No. 179). On April 30, 2018, the Court held a hearing on all pretrial Motions, including the instant Motion to Dismiss and Motion to Sever. For reasons that follow, Defendant Xi's Motion to Dismiss and Motion to Sever (Doc. No. 159) will be denied.

## II. BACKGROUND

From July 14, 2008 to November 3, 2015, Defendant Lucy Xi was employed as a scientist at GSK. (Doc. No. 125 at 7 ¶ 16.) In 2015, she moved to Thousand Oaks, California to work for Amgen, a biotechnology company. (See Doc. No. 186, Ex. A.) On December 29, 2015, the Government filed a Criminal Complaint against Defendants Yu Xue, Tao Li, Yan Mei, Tian Xue, and Lucy Xi charging them with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (Doc. No. 1.) That same day, warrants for the arrest of Lucy Xi and the other four Defendants were issued by a United States Magistrate Judge. On January 5, 2016, FBI Special Agents David Winsett, Lisa Grover, and Jeremy Creed arrested Defendant Xi at Amgen and subsequently interviewed her. (Doc. No. 186, Ex. A.)

### A. Agent David Winsett's Conversation with the Amgen Representative[1]

After the Agents had finished interviewing Defendant Xi and before they left to take her to downtown Los Angeles for her initial court appearance, Agent Winsett spoke with four Amgen representatives. Agent Winsett said to one Amgen representative, "Okay. So we're about to

---

[1] The dialogue quoted throughout this Section of the Opinion is based on listening to the audio recording of Agent Winsett's conversation with the Amgen representative carefully several times, as well as reviewing the transcript filed by the Government. Upon review of the audio recording, the Court has identified several inaccuracies in the transcript. Accordingly, the Court has made alterations to the transcript, which appear in brackets in this Opinion, to accurately reflect the recorded conversation.

2

leave. Things [are] going pretty well. She's being very cooperative. She's waived her right to [an] attorney." (Id. at 37.) He explained that they had to get her to downtown Los Angeles by noon "to get her processed" and discussed with the Amgen representative the best way to get Defendant Xi out of the building. (Id. at 37-38.)

Next, Agent Winsett asked one of the Amgen representatives about Defendant Xi's status at Amgen. (Id. at 39.) The Amgen representative explained that she would be put on paid administrative leave, and her housing and pay would not be affected "until something comes out of this, from a conclusion standpoint." (Id.) Agent Winsett said, "Well, that's very generous of the company so, um, and we'll keep in touch with you and let you know how [it] proceed[s]." (Id. at 40.)

The Amgen representative then asked Agent Winsett if Agent Winsett could give him some information regarding the allegations against Defendant Xi and explained that he had a meeting with Amgen executives that afternoon. (Id. at 40.) Agent Winsett agreed to provide him information and explained as follows:

> [Winsett]: Um, so, essentially—[she seems], you know, there's an issue of proprietary information from GlaxoSmithKline. Um, we showed her some information. Um, she claimed that it was research for uh, her PhD she's getting—she was studying for her PhD back when she was with them, and I don't know if there's any truth to that or not. Um, but anyways, she may have suspected that those group of individuals were doing something that, you know, she shouldn't have been a part of and she['s] on the outs, she's like this close to being divorced from her ex husband, who is one of the main subjects in this.
>
> [Amgen Representative 3]: Okay.
>
> [Winsett]: And so, he was kind of—I think she's, to be honest, I think she[] could be naïve about the whole situation. She's not real clear about what's there's and what's—
>
> [Amgen Representative 3]: So it's pretty much how you outlined it [initially that]—
>
> [Winsett]: Yeah.

3

[Amgen Representative 3]: She's a small fish and—

[Winsett]: Yeah.

[Amgen Representative 3]: You're trying to flip her.

[Winsett]: Exactly. And so, right now, it's hard to gauge but we don't believe that there's like, I guess, malicious intent to [to], you know, rob Glaxo and then go, you know, make millions. We think the other group of individuals, they had planned to do that and were willing and want[ing] to do that so, she's gonna be actually a great witness for us. I think, we just need to kinda keep her in the corral.

(Id. at 40-41.)

Agent Winsett then asked whether Amgen had investigated Defendant Xi's activities at the company. (Id. at 41.) The Amgen representative stated that he had authorized an investigation but did not want to initiate anything until after the arrest. (Id.) He continued, "[b]ecause we got that guys that, (UI)[2] was looking at it . . . [and our I.S.] group, which is part of the, uh, Asian cast—" (Id. at 42.) Agent Winsett responded, "Oh, right, right," and recommended that Amgen investigate Defendant Xi's activities, stating, "Okay. Yeah, so just, just for both of our benefits to know she's not pulling the 'I'm so innocent,' kind of card and you know she's a shark or something." (Id.) The Amgen representative responded that he did not see a long future for Defendant Xi at Amgen but confirmed that for the time being, her housing and pay would not be affected. (Id. at 42-43.)

Agent Winsett ended the conversation, and the Agents drove Defendant Xi to downtown Los Angeles. On January 20, 2016, a grand jury returned a forty-three count Indictment against Defendants, charging conspiracy to commit wire fraud, conspiracy to steal trade secrets, conspiracy to commit money laundering, wire fraud, and theft of trade secrets. (Doc. No. 24.)

---

[2] The notation "(UI)" is used in the transcript to indicate unintelligible speech. (Doc. No. 186, Ex. A at 1.)

## B.     The Superseding Indictment[3]

On May 24, 2017, a forty-five count Superseding Indictment was returned against the five Defendants, including Defendant Xi, which added allegations and two additional counts of theft of trade secrets. (Doc. No. 125.) The Superseding Indictment alleges that from 2010 to 2016, Defendants conspired to steal confidential and trade secret information from GSK and misappropriated thirty-six GSK documents containing confidential or trade secret information. (Id. ¶¶ 25-60.) It alleges that Defendants did so for the benefit of Renopharma, a company created in China to market, sell, and profit from the stolen GSK trade secret and confidential information. (Id. ¶¶ 64.) Defendant Xi is charged in the Superseding Indictment with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1); conspiracy to steal trade secrets in violation of 18 U.S.C. § 1832(a)(5) (Count 2); wire fraud in violation of 18 U.S.C. § 1343 (Counts 4-19); and theft of trade secrets in violation of 18 U.S.C. § 1832(a) (Counts 23-25).

The Superseding Indictment alleges that from July 14, 2008 to November 3, 2015, Defendant Xi worked as a scientist at GSK. (Id. ¶ 16.) As an employee of GSK, Defendant Xi signed a Conditions of Employment Agreement by which she agreed to abide by the Code of Conduct. (Id. ¶¶ 11, 16.) In doing so, she agreed not to engage in any competition with GSK, to avoid conflicts of interest, and not to use any confidential GSK information for her own benefit or for the benefit of other companies. (Id.) While at GSK, Defendant Xi "e-mailed trade secret and otherwise confidential information" to her then-husband, co-Defendant Yan Mei, to assist his work at Renopharma. (Id. ¶¶ 16, 61, 63.) Defendant Xi "did not have permission to transfer the trade secret or otherwise confidential information outside of GSK." (Id. ¶ 16.)

---

[3] In this Section of the Opinion, the Court has included only the allegations in the Superseding Indictment that relate to Defendant Xi.

The Superseding Indictment also alleges that Defendant Xi and co-Defendants Yu Xue, Tao Li, and Yan Mei created a U.S. corporation called Humanabio, Inc. as a U.S. subsidiary of Renopharma to hide their association with the Renopharma entities and to otherwise facilitate Renopharma's objective of marketing, selling, and profiting from the stolen GSK information. (Id. at 26 ¶ 65.)

As overt acts in furtherance of the conspiracy, the Superseding Indictment alleges that on February 13, 2012, Yu Xue sent Defendant Xi an email with an attached GSK Power Point presentation titled, "Potent Antibody Drugs by Design," containing confidential GSK information. (Id. at 28 ¶ 7.) That same day, Defendant Xi forwarded this email with the attachment to Yan Mei. (Id. ¶ 8.) Then, on March 21, 2012, Yan Mei sent an email to Defendant Xi with a business plan for a new company attached. (Id. ¶ 9.) Next, on April 1, 2012, Yu Xue sent an email from her personal email account to co-Defendant Tian Xue that contained a business plan for a new company as an attachment, similar to the business plan that Yan Mei sent to Defendant Xi on March 21, 2012. (Id. ¶ 10.) That same day, Yu Xue sent an email from her personal email account to Yan Mei that contained the same or similar business plan for a new company as an attachment that she had sent to Tian Xue earlier in the day. (Id. ¶ 11.)

The Superseding Indictment states that on July 16, 2012, Yu Xue caused Renopharma, Inc. to be incorporated in Delaware. (Id. at 30 ¶ 19.) Then, on July 31, 2012, Yan Mei exchanged messages with Defendant Xi about Yu Xue's future plans. (Id. ¶ 20.) Defendant Xi told Yan Mei that Yu Xue intended to quit her job at GSK in one or two years and explained that Yu Xue wanted to "get the money first." (Id.) Yan Mei replied, "that is our plan." (Id.) Later that same day, Yan Mei exchanged additional messages with Defendant Xi, explaining to her that he had almost completed the "R&D plan" and the "CRO plan" for Renopharma. (Id. ¶ 21.)

6

Defendant Xi suggested that Yan Mei "check some books of negotiation and leadership" to build up his skill set for his job at Renopharma. (Id.)

The Superseding Indictment further alleges that on August 28, 2012, Yan Mei exchanged messages with Defendant Xi about Yu Xue. (Id. ¶ 22.) Defendant Xi complained to Yan Mei that Yu Xue had been "annoying" her recently, and Yan Mei counseled her, "don't lose [your] temper" with Yu Xue. (Id. (alteration in original).) Defendant Xi responded, "I won't . . . she is the queen." (Id. (omission in original).) At the end of the conversation, Defendant Xi said, "Yu [YU XUE] showed me an email she drafted" and, discussing the terms of a Renopharma deal, suggested, "I think you should take out the 10% to 25% out. It is too much. lets just use 30% as the starting point." (Id. at 31 ¶ 22 (alteration in original).)

Then, on September 4, 2012, Defendant Xi exchanged messages with Yan Mei about his work at Renopharma. (Id. at 32 ¶ 27.) She told him, "You need to practice before you present," and "I told Yu [YU XUE] that you did not send [a] copy [of the presentation] to her because Tao [TAO LI] wants to combine yours with his and then Tao [TAO LI] will send it to Yu [YU XUE]." (Id. (alterations in original).) She then stated, "Be careful in the future. Dont disappoint me anymore. it is really stupid the way you handle stuff." (Id.)

On January 1, 2013, Defendant Xi sent an email to Yan Mei the subject line of which read "a good paper to read." (Id. at 34 ¶ 32.) In the email, she wrote to Yan Mei, "You need to understand it very well. It will help you in your future business [RENOPHARMA]."[4] (Id.

---

[4] In her Reply, Defendant Xi points out that the term "Renopharma" was not mentioned in this email but that the Government inserted the word in brackets, "suggesting without basis" that Defendant Xi intended her statement to refer to Renopharma. (Doc. No. 179 at 2.)

7

(alteration in original).) She attached Document 33 to the email.[5] (Id.) Finally, the Superseding Indictment alleges that on October 11, 2013, Defendant Xi sent Yan Mei an email warning him about two scientists working at Eli Lilly who had been indicted for stealing trade secret information. (Id. at 36 ¶ 41.)

## III. ANALYSIS

Defendant Xi moves to dismiss the charges against her in the Superseding Indictment for prosecutorial misconduct arguing that the Government charged her for the sole purpose of securing her cooperation against the other Defendants knowing that she is not criminally culpable for the offenses charged. (Doc. No. 159 at 11.) Alternatively, she contends that her trial should be severed from that of her co-Defendants because a jury will be unable to compartmentalize the evidence against her from the evidence against her co-Defendants, exposing her to a severe risk of prejudice if she is tried with them. (Id. at 16-17.)

### A. The Superseding Indictment Against Defendant Xi Will Not Be Dismissed Because the Agent's Comments Do Not Show that She Was Charged for the Sole Purpose of Securing Her Cooperation with the Government or that She Did Not Have a Malicious Intent to Steal from GSK

The crux of Defendant Xi's contention that the Superseding Indictment should be dismissed is that the Government charged her for the sole purpose of securing her cooperation against the other Defendants, knowing she did not have a malicious intent to steal from GSK. (Doc. No. 159 at 12-13; Doc. No. 179 at 4.) She supports this argument with the statements of Agent Winsett to the Amgen representative where he commented that Defendant Xi did not have malicious intent to rob GSK, that she was going to be a great witness for the Government, and that they were going to "keep her in the corral." (Doc. No. 159 at 13.) She argues that these

---

[5] Document 33 is a GSK document titled, "Points to Consider in Determining Critical Quality Attributes for Therapeutic Monoclonal Antibodies," which it is alleged contained confidential and trade secret information. (Doc. No. 125 at 11 ¶ 25.)

comments "reveal how the government viewed her case" and asserts that securing charges against her only for this purpose amounted to misconduct. (Id. at 11; Doc. No. 179 at 4.)

The Government responds that Defendant Xi was not charged for the sole purpose of securing her cooperation, that the Agent's comments were not improper, and that even if they were, she has not suffered any prejudice as a result. (Doc. No. 165 at 6, 8.) The Government also notes that a Magistrate Judge and two grand juries found probable cause for her crimes, and she is not permitted to test the sufficiency of the Superseding Indictment by her Motion to Dismiss. (Id. at 9.)

Under its supervisory powers, a court may dismiss an indictment for prosecutorial misconduct if the defendant was prejudiced by such misconduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 255-56 (1988). Prejudice is shown and "dismissal of an indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." Id. at 256 (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986)).

In the Third Circuit, it is well-settled that a court may dismiss an indictment for prosecutorial misconduct upon a showing of actual prejudice. Gov't of V.I. v. Fahie, 419 F.3d 249, 259 (3d Cir. 2005); United States v. Scott, 223 F.3d 208, 211 (3d Cir. 2000) (citing United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1982)). Dismissal of an indictment also may be proper even where no actual prejudice is shown "if there is evidence that the challenged activity was something other than an isolated incident unmotivated by sinister ends, or that the type of misconduct challenged has become 'entrenched and flagrant' in the circuit." United States v. Serubo, 604 F.2d 807, 817 (3d Cir. 1979). Granting a motion to dismiss an indictment for

prosecutorial misconduct is an "extreme sanction which should be infrequently utilized." Scott, 223 F.3d at 211 (quoting United States v. Pabian, 704 F.2d 1533, 1536 (11th Cir. 1983)).

But courts decline to dismiss indictments for prosecutorial misconduct where the indictment is supported by sufficient evidence and the misconduct was not prejudicial. See, e.g., United States v. Soberon, 929 F.3d 935, 940 (3d Cir. 1991) (reversing dismissal of counts in an indictment for prosecutorial misconduct where no prejudice was shown from the use of perjured testimony before the grand jury, explaining that the alleged perjury did not "fall into the narrow category of cases in which dismissal of charges without a showing of prejudice is warranted"); United States v. Fisher, 692 F. Supp. 495, 504 (E.D. Pa. 1988) (holding that the government's alleged conduct in misleading the grand jury "was nothing other than inadvertence" and "did not substantially influence the grand jury's decision to indict, so as to prejudice these defendants").

Provided "the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). The grand jury's function is to determine "whether there is probable cause to believe a crime has been committed and the protection against unfounded criminal prosecutions." United States v. Calandra, 414 U.S. 338, 343 (1974) (citing Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972)). And "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).

Importantly, a "pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." United States v. Huet, 665 F.3d 588,

10

595 (3d Cir. 2012) (quoting United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000)). The Third Circuit has explained:

> "Evidentiary questions"—such as credibility determinations and the weighing of proof—"should not be determined at th[is] stage." United States v. Gallagher, 602 F.2d 1139, 1142 (3d Cir. 1979). Rather, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept[] as true the factual allegations set forth in the indictment." United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990) (citing Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16, 72 S. Ct. 329, 96 L. Ed. 367 (1952)).

United States v. Bergrin, 650 F.3d 257, 265 (3d Cir. 2011) (alterations in original).

Defendant Xi relies on United States v. Fields, 475 F. Supp. 903 (D.D.C. 1979), in arguing that Agent Winsett's statements prove the Government knew she did not have malicious intent but brought charges against her to coerce her cooperation. In Fields, the court dismissed an indictment because the circumstances of the case and the prosecutor's conduct showed the government did not have a prosecutable case against defendant but had indicted her solely to secure her cooperation. 475 F. Supp. 905-07. Fourteen days before trial, the government moved to dismiss the indictment without prejudice stating that it could not vouch for the credibility of its essential witness only to reindict defendant thereafter. Id. at 904. Defendant moved to dismiss the indictment with prejudice arguing that insufficient evidence supported her first indictment and that its purpose was to pressure her into testifying against the essential witness, who was the real target of the investigation. Id. She claimed the government misused the grand jury, manipulated it into indicting her without a prosecutable case, held the indictment over her head to coerce cooperation, and then reindicted her to punish her. Id. at 904-05.

The court agreed. The government's lack of bona fide intent to prosecute defendant was revealed by its dismissal fourteen days before trial; its subsequent threat to reindict her which did not materialize at the time; its reindictment of her only after the essential witness pled guilty; and its lengthy indictment of her when it was clear she was a lesser member of the conspiracy. Id. at

11

906. The court noted that "the government may seek to secure the testimony of a validly-indicted individual against another person" and that "it is often through such 'cooperation' that those at higher levels in conspiracies or other criminal endeavors can ever be brought to justice." Id. at 907. But, the court concluded, a person may not "be indicted without sufficient evidence against him solely to secure his cooperation with the government in testifying against another," and for this reason, the court dismissed the indictment. Id. at 907-08.

Here, Defendant Xi has demonstrated neither that the Government engaged in prosecutorial misconduct in bringing charges against her nor that she was prejudiced by any misconduct. Defendant Xi relies on comments Agent Winsett made to the Amgen representative in an effort to show that the Government's sole purpose for charging her was to secure her cooperation. She points to Agent Winsett's statement, "I think she's, to be honest, I think she[] could be naïve about the whole situation." (Doc. No. 186, Ex. A at 41.) She also highlights Agent Winsett's agreement with the Amgen representative's statement, "She's a small fish and . . . [y]ou're trying to flip her." (Id.) And she points to the following statement:

> And so, right now, it's hard to gauge but we don't believe that there's like, I guess, malicious intent to [to], you know, rob Glaxo and then go, you know, make millions. We think the other group of individuals, they had planned to do that and were willing and want[ing] to do that so, she's gonna be actually a great witness for us. I think, we just need to kinda keep her in the corral.

(Id.) Finally, she points to Agent Winsett's agreement with the statement of the Amgen representative regarding the "Asian cast." (Id. at 42.)

Defendant Xi argues that these statements alone show that the Government believed she did not have malicious intent to steal but charged her for the sole purpose of securing her cooperation. These statements, however, fail to prove her contention. That Defendant Xi could have been "naïve about the whole situation" does not show that she was charged for an improper purpose. Nor does the fact that she may be a "small fish" show that there was not probable cause

12

to bring charges against her. And the statement, "[a]nd so, right now, it's hard to gauge but we don't believe that there's like, I guess, malicious intent to [to], you know, rob Glaxo and then go, you know, make millions" does not show that when the Government sought a Criminal Complaint against her, it did not believe that there was evidence of her intent to commit the crime in this case. Finally, the statement that she will be a great witness does not show she was charged without probable cause.

Even assuming these comments shed light on the Government's strategy, they do not show that the Government's sole purpose in charging her was to secure her cooperation or that the Government's beliefs "substantially influenced the grand jury's decision to indict." See Bank of Nova Scotia, 487 U.S. at 256. A Criminal Complaint was filed against Defendant Xi because the Magistrate Judge found probable cause that she had committed the crimes charged. (Doc. No. 1.) And after the Criminal Complaint was filed, two grand juries found probable cause to return indictments against her. The Superseding Indictment, returned by an unbiased grand jury, is enough to call for a trial of Defendant Xi. See Costello, 350 U.S. at 363. Even if one of the Government's reasons for charging her was for her cooperation, this would not be enough to dismiss the Superseding Indictment for prosecutorial misconduct where a Magistrate Judge and two grand juries have agreed that the charges are supported by probable cause.

The facts of this case are unlike those in United States v. Fields. There, the government's lack of bona fide intent to indict her was shown by its history of conduct, including its dismissal of the indictment without prejudice fourteen days before trial, its later threats to reindict, its reindictment after the essential witness had pled guilty, and its lengthy indictment despite defendant's limited involvement. Fields, 475 F. Supp. 905-07. And although the court found that defendant was indicted solely to secure her cooperation, it was not before clarifying that it is

permissible for the government to seek to secure the testimony of a validly indicted person. Id. at 907-908.

Here, unlike in Fields, the only evidence of prosecutorial misconduct are Agent Winsett's offhand remarks to the Amgen representative. This evidence alone is insufficient to show that the Government charged Defendant Xi solely for cooperation. Even if one of the Government's reasons for charging Defendant Xi was to gain her cooperation, if the charges against her are otherwise valid, it is permissible for the Government to seek her testimony. Weighing Agent Winsett's comments against the Magistrate Judge's and two grand juries' findings of probable cause, his comments alone are not enough to show that Defendant Xi was "indicted without sufficient evidence" and "solely to secure [her] cooperation with the government in testifying against another." Id. at 908. For this reason, Defendant Xi's Motion to Dismiss will be denied.[6]

---

[6] In her Motion to Dismiss, Defendant Xi also asserts: "To the extent the Government argues that Agent Winsett had limited knowledge about the case, Ms. Xi requests an evidentiary hearing so that she may inquire how Agent Winsett formed his opinions of the charges against her." (Doc. No. 159 at 10 n.3.)

The standard for determining whether a court should grant a pretrial evidentiary hearing on a claim of prosecutorial misconduct is set forth in United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996). In Voigt, the Third Circuit explained that to be entitled to a pretrial evidentiary hearing, "a defendant's moving papers must demonstrate a 'colorable claim' for relief." Id. To "raise a colorable claim of outrageousness," a "defendant's submissions must demonstrate an issue of fact." Id.; accord United States v. Fattah, 858 F.3d 801, 810 (3d Cir. 2017) ("To be entitled to an evidentiary hearing, the defendant's moving papers must be "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion.").

Defendant Xi has not met her burden of demonstrating her entitlement to an evidentiary hearing under this standard. As noted supra, she has not shown a colorable claim for relief based on Agent Winsett's statements. By simply pointing to his statements to the Amgen representative, she has not presented a colorable constitutional claim of prosecutorial misconduct. Agent Winsett was not the case agent. There is no allegation or evidence that the case agent or the prosecutor adopted his statements. In any event, neither Agent Winsett's statement that Defendant Xi "could have been naïve about the whole situation" nor his cautious, equivocal statement that "it's hard to gauge but we don't believe that there's

### B. Defendant Xi's Trial Will Not Be Severed from the Trial of Her Co-Defendants Because She Will Not Be Unfairly Prejudiced by a Joint Trial

Defendant Xi argues that her trial should be severed from that of her co-Defendants because the allegations against her are not similarly situated to those against her co-Defendants, since the Superseding Indictment only charges her with sending two documents, one containing trade secret information and the other containing confidential information. (Doc. No. 159 at 16.) She contends that if she is tried with her co-Defendants, the evidence against them may cause a prejudicial spillover effect and prevent the jury from treating her case individually. (Id. at 17.) The Government submits that Defendant Xi has not shown that she would face clear and substantial prejudice to overcome the presumption in favor of joint trials. (Doc. No. 165 at 12.) It asserts that a joint trial would conserve government funds, promote convenience, and avoid delays, and that the jury would have no difficulty separating offense conduct. (Id. at 12, 14.)

Federal Rule of Criminal Procedure 8 governs joinder of offenses and defendants. Fed. R. Crim. P. 8; United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003). Rule 8(b) provides that defendants may be charged together in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8. Rule 8(b) governs joinder of both defendants and offenses when multiple defendants are charged in an indictment, even when defendants are not all charged together in each count. United States v. Walker, 657 F.3d 160, 169 (3d Cir. 2011); Irizarry, 341 F.3d at 287. "The mere allegation of a conspiracy presumptively

---

like, I guess, malicious intent to [to], you know, rob GSK" shows that she was indicted solely for her cooperation knowing that she was not criminally culpable. There also was nothing improper about Agent Winsett's agreement with the statement, "She's a small fish and . . . You're trying to flip her." As noted, the Government is permitted to seek the cooperation of a properly indicted individual. Based on the foregoing, no disputed issues of material fact exist that would affect the outcome of Defendant Xi's Motion. Accordingly, Defendant Xi will not be granted an evidentiary hearing on her claim of prosecutorial misconduct.

satisfied Rule 8(b), since the allegation implies that the defendants named have engaged in the same series or acts or transactions constituting an offense." Irizarry, 341 F.3d at 289 n.5 (quoting United States v. Friedman, 854 F.2d 535, 561 (2d Cir. 1988)).

Federal Rule of Criminal Procedure 14 permits a court to order a severance of defendants' trials if joinder of defendants or a consolidated trial "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); Walker, 657 F.3d at 170 (quoting United States v. Jiminez, 513 F.3d 62, 82 n.7 (3d Cir. 2008)). Rule 14 provides in relevant part: "If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

It is well-settled that "the federal system prefers joint trials of defendants who are indicted together because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005) (quoting United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005)). "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro v. United States, 506 U.S. 534, 538-39 (1993) (citations omitted). Severance under Rule 14 should be granted only "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539.

"Mere allegations of prejudice are not enough." United States v. John-Baptiste, 747 F.3d 186, 197 (3d Cir. 2014) (quoting United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981)). Instead, "[d]efendants seeking a severance bear a 'heavy burden' and must demonstrate not only that the court would abuse its discretion if it denied severance, 'but also that the denial of

severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial.'" Lore, 430 F.3d at 205 (quoting Urban, 404 F.3d at 775).

A defendant claiming "prejudice from the spillover of evidence" against a co-defendant "is not entitled to a severance merely because evidence against a co-defendant is more damaging than evidence against the moving party." Id. (quoting United States v. Somers, 496 F.2d 723, 730 (3d Cir. 1974)). And "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540 (citations omitted). Rather, "the relevant inquiry is 'whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.'" John-Baptiste, 747 F.3d at 197 (quoting United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005)). Even when there is a risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539 (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

Defendant Xi relies on United States v. Gomez, 111 F. Supp. 2d 571 (E.D. Pa. 2000), and United States v. Cortinas, 142 F.3d 242 (5th Cir. 1998) in arguing that evidence against her co-Defendants may cause a prejudicial spillover effect and prevent the jury from treating her case individually. (Doc. No. 159 at 17.)

In Gomez, the court granted defendant's motion to sever his case, which concerned drug offenses, from that of his four co-defendants, which primarily concerned murder charges. 111 F. Supp. 2d at 575. Finding severance warranted under Rule 14, the court explained that the benefits of a joint trial were outweighed by the fact that several of the co-defendants were being tried for different crimes than defendant. Id. at 574. The court noted that in cases where defendants' actions and culpability significantly overlap, a joint trial promotes efficiency and

coherence, but in this case, trying defendants together would increase the complexity of the case. Id. As to prejudice, it would be manifestly unfair if a juror were to impute criminal liability to the defendant based on illegal actions in a separate conspiracy with which he was not charged. Id. The court concluded that the "risks at issue are appreciably higher than the possibility of such 'spillover effect' inherent in an ordinary joint prosecution." Id. at 574-75.

In Cortinas, the Fifth Circuit held that defendants' motion for severance under Rule 14 should have been granted because defendants, charged with conspiracy and drug trafficking activity, were prejudiced by highly inflammatory evidence about a shooting executed by a motorcycle gang that had joined the conspiracy after defendants had already withdrawn. 142 F.3d at 248. The court concluded that limiting instructions given by the trial judge "were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent, criminal activities" of the motorcycle gang. Id.

Here, Defendant Xi does not argue that she was improperly joined in the Superseding Indictment with her co-Defendants under Rule 8(b) but instead contends the Court should sever her trial under Rule 14 because she would be unfairly prejudiced by the spillover of evidence against them in a joint trial. In essence, she asserts that she is far less culpable than her co-Defendants and that the jury will be unable to compartmentalize the evidence against her from the evidence against her co-Defendants. The Court is not persuaded.

Severance is not warranted in this case. Defendant Xi has not met her "heavy burden" of showing that "denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." See Lore, 430 F.3d at 205 (quoting Urban, 404 F.3d at 775). While it appears the evidence against Defendant Xi may be less than her co-Defendants, the conspiracy and substantive charges Defendants face all relate to the same conduct. The allegations against

18

all Defendants concern theft of trade secret and confidential information and actions related to the theft. She is not entitled to a separate trial merely because the evidence against her co-Defendants may be more damaging or because she may have a better chance of acquittal if she is tried separately. See id. at 205; Zafiro, 506 U.S. at 540. She has not shown that a jury would be unable to compartmentalize the evidence or that a limiting instruction would not cure any potential prejudice.

Unlike the co-defendants in Gomez, Defendant Xi's co-Defendants are not charged with wholly unrelated crimes that would present a risk that criminal liability would be imputed to her for completely separate crimes. Instead, the actions and culpability of Defendant Xi and her co-Defendants significantly overlap, since the charges in the Superseding Indictment all relate to an overarching scheme to steal confidential and trade secret information from GSK. And unlike in Cortinas, where defendants were prejudiced by evidence of a shooting that had happened after they had withdrawn from the conspiracy, Defendant Xi did not at any point withdraw from the conspiracy. That she may not have sent any documents after January 1, 2013 is not the same as withdrawing. Defendant Xi was employed at GSK until November 2015, and the allegations in the Superseding Indictment all relate to one overarching scheme. That Defendant Xi may be less culpable than her co-Defendants is insufficient to warrant a separate trial.

## IV. CONCLUSION

For the foregoing reasons, Defendant Xi's Motion to Dismiss and Motion to Sever (Doc. No. 159) will be denied. An appropriate Order follows.