**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | |
| ) | |
| YU XUE       ) | CRIM. NO. 16-22 |
| TAO LI       ) | |
| YAN MEI      ) | |
| TIAN XUE     ) | |
| LUCY XI      ) | |

**DEFENDANT LUCY XI'S MOTION IN LIMINE # 5: TO PREVENT THE GOVERNMENT FROM RELITIGATING CONCLUSIONS OF LAW MADE BY THIS COURT**

## I.   INTRODUCTION

On September 22, 2020, this Court ruled *as a matter of law* that the "amount of loss" to the alleged victim "in this case," pursuant to Section 2B1.1 of the United States Sentencing Guidelines, "is $0." (Order of Sept. 22, 2020, Doc. No. 313, at 45.) The government has stated that it intends to relitigate or raise at trial issues related to the cost of developing the allegedly stolen information, its fair market value, the alleged amount of damages allegedly sustained by GSK as a result of the alleged conspiracy, and/or the damages Defendants allegedly purposefully sought to inflict on GSK. Because the law-of-the-case doctrine applies, however, the Court should follow its prior ruling in this case and not allow the government to relitigate these fundamental legal issues or argue these issues before the jury at trial.

## II.   BACKGROUND

1.    On January 20, 2016, a grand jury returned a forty-three county Indictment charging Ms. Xi and her co-Defendants and alleged co-conspirators, Yue Xue, Tao Li, Yan Mei, and Tian Xue ("Defendants"), with conspiracy to commit wire fraud, conspiracy to steal trade

secrets, conspiracy to commit money laundering, and substantive counts of wire fraud and theft of trade secrets. (Indictment, Doc. No. 24.)

2. On May 24, 2017, a grand jury returned a forty-five count Superseding Indictment charging Defendants with the same crimes. (Superseding Indictment, Doc. No. 125.)

3. The Superseding Indictment alleges that from 2010 to 2016, Defendants conspired to steal confidential and trade secret information from GlaxoSmithKline LLC ("GSK"). (*Id*. at 1.) As to Ms. Xi specifically, the Superseding Indictment alleges that in furtherance of the alleged conspiracy, she allegedly sent one GSK trade secret document, and one GSK confidential / proprietary document, to her then-husband, Defendant Yan Mei. (*Id*. at 7-8, 28.) The Superseding Indictment further alleges that Ms. Xi received an early copy of a business plan from her then-husband, had four supposedly suspicious Google Chat conversations with him, and forwarded an email of general interest to the Chinese-American community to him. (*Id*. at 30-32, 34, 36.)

4. On August 31, 2018, Ms. Xi's co-Defendant, Yu Xue, pled guilty to one count of conspiracy to steal trade secrets, in violation of 18 U.S.C. § 1832(a)(5). (Doc. No. 238.)

5. On September 17, 2018, Ms. Xi's co-Defendant, Tao Li, pled guilty to one count of conspiracy to steal trade secrets, in violation of 18 U.S.C. § 1832(a)(5). (Doc No. 241.)

6. In connection Ms. Xue's and Mr. Li's sentencing, from April 30, 2019 to May 2, 2019, the Court held an evidentiary hearing on the amount of the loss, if any, to GSK under the Sentencing Guidelines.

7. The government argued that the applicable loss amount for Sentencing Guidelines purposes "substantially exceeds $550 million." (Doc. No. 271 at 2.) Ms. Xue and Mr. Li argued the loss amount was $0. (Doc. No. 313 at 2.)

8. Seven fact and expert witnesses testified at the three-day evidentiary hearing regarding the cost of developing the allegedly stolen information, its fair market value, and the loss the Defendants allegedly purposefully sought to inflict on GSK. The government "made no effort to show that GSK suffered any actual loss and, instead, [ ] focused entirely on intended loss." (*Id*. at 32, fn. 30.)

9. Based on the evidence presented at the hearing and the law, the Court held that, "the actual loss in this case is $0." (*Id*. at 33, fn. 30.) The Court further held that for purposes of Section 2B1.1 of the Sentencing Guidelines, "the amount of loss in this case is $0." (*Id*. at 45.)

10. On June 25, 2021, the government filed a Notice of Appeal regarding both Ms. Xue's and Mr. Li's sentences. (Doc. Nos. 363-364.) Specifically, the government is appealing "all aspects of the sentencing determination, including the loss calculation under the Sentencing Guidelines (addressed in an order of this Court entered on September 22, 2020)." (*Id*.)

### III.   ARGUMENT

**A. The Law of the Case Doctrine Applies to the Court's Ruling on Loss Amount.**

The law of the case doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)). As the Supreme Court has explained, the purpose of this doctrine is that "[t]his rule of practice promotes finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Id.* at 816. To that end, the Third Circuit has explained that, "[l]aw of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single trial." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F. 3d 111, 116 (3rd Cir.

1997) (quoting 18 Charles A. Wright, et al., *Federal Practice and Procedure* § 4478 at 788 (1981)).

### 1. The Court's Ruling on Loss Amount Applies to Ms. Xi.

The law of the case doctrine requires that the current dispute involve the same parties and issues. *In re W.R. Grace & Co.*, 591 F. 3d 164, 174 (3rd Cir. 2009) ("At the most basic level, *Gerard* did not involve the same parties and issues, as is required for application of the law of the case doctrine."); *see also, U.S. v. Hodge*, 389 Fed. Appx. 96, 103 n.8 (3rd Cir. 2010) ("Our circuit has recognized that, for the law of the case doctrine to apply, the same parties must have been involved in the earlier decision." (citing *In re W.R. Grace & Co.*)).

There is little case law around the country about co-defendants in the same trial, but cases out of the Tenth Circuit emphasize that a decision affecting one defendant should be applied in the same way toward their codefendant. *U.S. v. Parada* discusses this idea at length:

> The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Furthermore, when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue.
> . . . .
> Because Mr. Parada is identically situated to McNeill—both men were passengers in the vehicle—the legal issue concerning their detention is the same. As such, the law of the case doctrine applies, and we decline to consider Mr. Parada's argument regarding his detention.

*U.S. v. Parada*, 577 F. 3d 1275, 1279–80 (10th Cir. 2009) (internal citations removed). In *U.S. v. Parada*, the Tenth Circuit had previously ruled against one of Parada's co-defendants, McNeill, on appeal, finding that there was no unlawful search and seizure prior to their arrest. *See id.* at 1279. McNeill's arguments against the search and seizure were similar to Parada's, and therefore the legal issues had already been litigated in that earlier stage of the case. *See id.* The Tenth Circuit

4

determined that following the law of the case should be considered a serious rule of practice, even if it is not mandatory. *See id.* at 1280 ("We are mindful that the law of the case doctrine is not an inexorable command, but, rather, only a rule of practice in the courts and not a limit of their power. But, it is almost axiomatic that one panel of this court cannot overrule another panel." (internal citations and quotations removed)).

If one co-defendant cannot relitigate a decided issue, it stands to reason that when the court rules against the government as to one or more co-defendants, that the government may not then relitigate the same issue against another co-defendant. The tenth circuit agreed with this proposition in *U.S. v. Lake*, stating, "when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the issue. *We think it beyond question* that the doctrine may apply against the government as well as against codefendants." 556 Fed. Appx. 706, 708 (10th Cir. 2014) (emphasis added) (internal citations removed).

Here, the Court's decision as to loss amount was based on the theft of trade secrets—the "substantive offense that was the subject of the conspiracy in this case." (Doc. No. 313 at 28.) The Court further concluded, "the actual loss *in this case*" and the "the amount of loss *in this case*"—*i.e.*, attributable to the conspiracy as a whole—"is $0." (*Id.* at 33 fn. 30 and 45 (emphasis added).) The Court did not qualify its holding to the loss amount caused by Ms. Xue and Mr. Li, but rather looked at the loss from the perspective of the overall conspiracy. As one of the Defendants charged with this same substantive offense and conspiracy, the Court's loss amount ruling is equally applicable to Ms. Xi. The government failed to establish a loss amount above $0 when this issue was litigated in this case, and the government should be held to the Court's ruling in proceedings against Ms. Xi. Accordingly, the Court should not allow the government to relitigate or argue at

trial the issues of the cost of developing the allegedly stolen information, its fair market value, the alleged amount of damages allegedly sustained by GSK as a result of the alleged conspiracy, or the damages Defendants allegedly purposefully sought to inflict on GSK.

### 2. None of the Extraordinary Circumstances Worthy of Overcoming the Law of the Case Are Present Here.

As the Supreme Court stated in *Arizona v. California*, "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. at 618. The court, however, should be wary of revisiting a prior decision, absent extraordinary circumstances. *See Christianson v. Colt*, 486 U.S. at 817. The Third Circuit has expounded upon what qualifies as an "extraordinary circumstance" worth overcoming the law of the case:

> This Circuit has recognized several "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation. They include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.

*Public Interest Research Group of New Jersey, Inc.*, 123 F. 3d at 116-17. None of these circumstances apply to this case.

First, the government has not proffered new evidence that was not available at the time of the evidentiary hearing on loss amount in 2019. Moreover, any new evidence would not cure the government's erroneous initial argument regarding loss under the United States Sentencing Guidelines § 2B1.1(b)(1). (*See* Doc. No. 313 at 38 (stating that the government made a critical error in calculating loss under the Sentencing Guidelines).)

Second, § 2B1.1(b)(1), under which the Court determined the loss amount, has not changed since the Court's ruling on loss amount.

Third, the Court's decision was not erroneous, much less "clearly" erroneous, and does not create manifest injustice. The First Circuit has explained that "manifest injustice" does not mean that law of the case should be thrown out because a litigant thinks they could make a better argument on their second try. *See Ellis v. U.S.*, 313 F. 3d 636, 648 (1st Cir. 2002) ("In that regard, however, neither doubt that the correctness of a predecessor judge's rulings *nor a belief that the litigant may be able to make a more convincing argument the second time around* will suffice to justify reconsideration." (emphasis added)). The government should not be afforded a second bite at the apple on the loss amount issue in a trial against Ms. Xi.

### 3. Judicial Policy Favors Applying the Law of the Case Doctrine.

As noted above, the Supreme Court has stated, "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe [sic] to do so in the absence of extraordinary circumstances[.]" *Christianson v. Colt*, 486 U.S. at 817. In practice, courts are generally reluctant to reopen previously decided parts of a case. *See Messenger v. Anderson*, 225 U.S. 436, 444 (1912) ("'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."); *see also, Ellis v. U.S.*, 313 F. 3d at 646 ("[A] court ordinarily ought to respect and follow its own rulings, made earlier in the same case."). The reason for this, as the Third Circuit has explained, is "[b]ecause it prevents courts from entertaining endless appeals on the same issue, the doctrine promotes finality and judicial economy." *Research Group of New Jersey, Inc.*, 123 F. 3d at 116; S*ee also. Ellis v. U.S.*, 313 F. 3d at 647 ("[T]he doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system.").

The most important policy reason to follow the law of the case doctrine in this instance is to promote efficiency. As *Ellis v. U.S.* opined, "a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay." *Id.* Judicial efficiency is even more important now, as the Eastern District of Pennsylvania emerges from the COVID-19 crisis and the delays it has caused in the adjudication of pending matters. Time is at a higher premium in the court system than it ever has been before, and this Court should not spend time relitigating issues that it has already firmly decided. The Court should, therefore, apply the law of the case and not allow the government, at Ms. Xi's trial, to raise anew the cost of developing the allegedly stolen information, its fair market value, the alleged amount of damages allegedly sustained by GSK as a result of the alleged conspiracy, or the damages Defendants allegedly purposefully sought to inflict on GSK. The Court has already determined that GSK incurred no actual damages and that the Defendants did not intend to inflict damages on GSK.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Lucy Xi respectfully requests that the Court follow the law of the case doctrine and not allow the government to relitigate or argue at trial the cost of developing the allegedly stolen information, its fair market value, the alleged amount of damages allegedly sustained by GSK as a result of the alleged conspiracy, or the damages Defendants allegedly purposefully sought to inflict on GSK.

Dated: July 1, 2021                                  Respectfully submitted,

                                                             /s/ Eric L. Yaffe
                                                             Eric L. Yaffe, Esq. (*pro hac vice*)
                                                             Frank J. Sciremammano, Esq. (*pro hac vice*)
                                                             LATHROP GPM LLP
                                                             The Watergate – Suite 700

600 New Hampshire Avenue, NW
Washington, DC 20037
Attorneys for Defendant Lucy Xi

## CERTIFICATE OF SERVICE

      I hereby certify that on the date set forth below, a true and correct copy of the foregoing was transmitted to the Court's CM/ECF system for electronic service upon counsel for all parties of record.

Dated: July 1, 2021                                                s/ Eric L. Yaffe
                                                                                     Eric L. Yaffe (*pro hac vice*)